## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **GARMIN LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 2:06-CV-338 (LED)** |
| **vs.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **TOMTOM, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant TomTom, Inc.'s ("TomTom") Motion for Leave to Add

Garmin International, Inc. (Docket No.45), Plaintiff Garmin Ltd.'s ("Garmin") Motion to Dismiss

TomTom's Fourth, Fifth, and Sixth Counterclaims and to Strike TomTom's Fifth Affirmative

Defense (Docket No. 62), Garmin's Motion for Protective Order on Topics 1-3 of TomTom's First

30(b)(6) Notice (Docket No. 72), TomTom's Cross-Motion to Compel and for Sanctions (Docket

No. 75), and Garmin's Motion for Leave to Supplement its P.R. 3.1 Infringement Contentions

(Docket No. 76). After considering the motions, the Court **GRANTS** TomTom's Motion for Leave

to Add Garmin International, **GRANTS** TomTom's Cross-Motion to Compel, **GRANTS** in part and

**DENIES** in part Garmin's Motion for Leave to Supplement, and **DENIES** all remaining motions.

## BACKGROUND

Garmin and TomTom design and sell competing portable navigation systems and devices in

the United States market. On August 23, 2006, Garmin filed this action accusing TomTom of

infringing U.S. Patent No. 7,062,378 ("the '378 patent"), entitled "Portable Navigation System and

Device with Audible Turn Instructions." Five motions are now before the Court.

## MOTION TO DISMISS

On March 14, 2007, TomTom timely amended its answer and counterclaims to add an affirmative defense and counterclaim of inequitable conduct and two counterclaims of Sherman Act § 2 antitrust violations regarding the '378 and '330 patents. Claiming that TomTom's allegations were factually insufficient, Garmin moved to strike the affirmative defense and to dismiss the counterclaims for failure to state a claim.

### Standard of Review

Dismissal pursuant to of the Federal Rule of Civil Procedure 12(b)(6) is appropriate where a party fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, a court construes the complaint in favor of the plaintiff and all facts pleaded are taken to be true, no matter how improbable those facts. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, __U.S. __, 127 S. Ct. 1955, 1974 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 204 (5th Cir. 2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl.*, 127 S. Ct. at 1965. However, "in order to avoid dismissal for failure to state a claim . . . a plaintiff must plead specific facts, not mere conclusory allegations." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). A court "will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Id.*

2

**Analysis[1]**

*The Inequitable Conduct Counterclaim and Defense*

Inequitable conduct is an issue that "pertains to or is unique to patent law," thus Federal Circuit law applies when deciding if inequitable conduct has been adequately pled. *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). "Inequitable conduct, while a broader concept than fraud, must be pled with particularity." *Ferguson Beauregard/ Logic Controls, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). "Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir 1995). One who pleads inequitable conduct must show "materiality of the prior art, knowledge chargeable to the applicant of the prior art and of its materiality, and the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO." *Id.*

TomTom alleges that individuals involved in the filing and prosecution of the patent failed to disclose to the PTO three separate prior arts: the Ultradata TravelStar GPS ("Ultradata"), the Zhao textbook, and the Datus RouteFinder PNA. In Garmin's reply, it withdrew its motion to dismiss with regards to the Datus RoutFinder PNA.

Regarding Ultradata, TomTom avers that the former president and current president toured the manufacturing facility of Ultradata and learned confidential business information. Proposed Second Am. Answer and Countercls. ¶ 42. TomTom alleges facts showing that the executives

---

[1]TomTom attached a Proposed Second Amended Answer and Counterclaims to its Opposition to Garmin's Motion to Dismiss. The Court used the proposed Amended Answer to assess the adequacy of TomTom's pleadings. The Court grants leave for TomTom to file its Proposed Second Amended Answer and Counterclaims.

learned of a "navigation device contained in a portable handheld housing which included a GPS receiver and antenna, memory, a processor, and a speaker, and which also included the ability to calculate a route to a desired destination, provide audible instructions to navigate a route, and recalculate a route when the user has deviated from the route." *Id*. TomTom then contends that Garmin filed a patent for a device that included those attributes but failed to disclose Ultradata to the PTO. *Id*.

Citing *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.* for the proposition that knowledge by executives does not equal knowledge of one with the duty of candor, Garmin contends that TomTom's pleadings about Ultradata fail. However, *Schreiber Foods* addresses the standard of proof in a judgment as a matter of law and not the sufficiency of a complaint. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 92 F. Supp. 2d 857, 859 (E.D. Wis. 2000). Although TomTom does not allege that the executives took part in the application process, it is plausible that the executives disseminated their knowledge to the applicant group before filing.  TomTom has adequately alleged a claim of inequitable conduct for the Ultradata TravelStar GPS.

For the Zhao textbook, TomTom claims that two of the inventors possessed copies of the book prior to filing the application. Proposed Sec. Am. Answer and Countercls. ¶ 43. TomTom alleges that the book discusses a portable navigation device with the same features mentioned in several claims of the '378 patent, which Garmin filed in 2004. Garmin contends that TomTom failed to allege knowledge of materiality and knowledge of the contents of the book. However, it is plausible from the counterclaim that the inventors read the book while possessing it.

Regarding materiality, Garmin conceded that TomTom adequately pled inequitable conduct for the Datus RouteFinder but not for the Zhao textbook. However, little difference exists between

4

the RouteFinder allegation and the Zhao textbook allegation with regards to materiality. In both

allegations, TomTom avers that some of the inventors knew of the prior art and knew that the prior

art was similar to claims in their proposed patent. Therefore, TomTom adequately pled inequitable

conduct regarding the Zhao textbook.

For the above reasons, TomTom has adequately pled inequitable conduct.

*The Antitrust Counterclaims*

"Enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of

the Sherman Act provided the other elements necessary to a § 2 case are present." *Walker Process*

*Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965) (commonly referred to as a

"*Walker Process*" claim). *Walker Process* claims require a showing of actual fraud upon the PTO

through factual misrepresentations or factual omissions. *Dippin' Dots. Inc. v. Mosey*, 476 F.3d 1337,

1346 (Fed. Cir. 2007); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed.

Cir.1998). The heightened pleading requirements Rule 9(b) apply to the fraud element of the antitrust

claim. *Medimmune, Inc. v. Genentech, Inc.*, 472 F.3d 958, 967 (Fed. Cir. 2005).

The remaining elements of a § 2 attempted monopolization claim are "(1) that the defendant

has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3)

a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506

U.S. 447, 459 (1993). To find a dangerous probability of achieving monopoly power, the Court must

consider the relevant market. *Id*. at 456. The Fifth Circuit has combined the relevant market analysis

with the second requirement above to read as a "specific intent to monopolize the relevant market."

*Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. of Dist. No. 1 of Tangipahoa Parish*, 309 F.3d

836, 839 (5th Cir. 2002). Federal Circuit law applies to the fraud element, and regional circuit law

5

applies to the remaining three elements. *Nobelpharma*, 141 F.3d at 1068 (en banc in relevant part).

TomTom claims that Garmin violated § 2 of the Sherman Act by asserting the fraudulently acquired '378 and '330 patents. The Court will first address the fraud element as to the '378 patent, followed by the fraud element as to the '330 patent, and then combine the analysis of the remaining three elements for both patents.

TomTom alleges that one or more of the individuals involved in the filing and prosecution of the '378 patent "deliberately and intentionally committed fraud before the PTO." Proposed Sec. Am. Answer and Countercls. ¶ 94. TomTom incorporates by reference the facts pled in its inequitable conduct claims. *See* ¶¶ 76–92. Although inequitable conduct does not equate to *Walker Process* fraud, TomTom's fraud claim meets Rule 9(b)'s heightened pleading standard by identifying the "who, what, when, where and how" of the alleged fraud when read in conjunction with TomTom's inequitable conduct claims. TomTom properly pled *Walker Process* fraud.

Turning to the '330 patent, TomTom notes that the '330 patent claims were previously found invalid by the Western District of Wisconsin, Civil Case Number 3:06-C-0063-C, because of the Zhao textbook prior art. TomTom pled facts that show either the inventors or someone involved in the patent application or prosecution knew of the prior art and deliberately failed to disclose it. Proposed Sec. Am. Answer and Countercls. ¶¶ 110–126. As with the '378 patent, TomTom also alleges that "the '330 patent would not have been granted (at least in their present form) but for Garmin's fraudulent omission." *Id.* ¶ 126. Because TomTom names the relevant prior art, identifies who failed to disclose it, and pled that the PTO relied on the omission,  TomTom adequately pled the fraud element for the '330 patent.

For the remaining antitrust elements, TomTom's allegations as to the '378 and '330 patents

mirror one another, so the Court analyzes these counterclaims together. Contending that TomTom

has only pled legal conclusions and no factual support, Garmin attacks TomTom's pleadings on all

three elements. The Court first considers the relevant market. *See Surgical Care Ctr.*, 309 F.3d at

839.  TomTom alleges that the relevant market is the market for "portable handheld navigation

devices in the United States." Proposed Sec. Am. Answer and Countercls. ¶¶ 98, 129. TomTom

further divides the product market into two sub-markets: the Personal Navigation Devices and the

Personal Digital Assistants. *Id*. ¶¶ 99–100, 130-31. Garmin attacks TomTom's definition of the

relevant market, but that is an argument for summary judgment not a motion to dismiss. As the '378

and '330 patents cover portable handheld navigation devices, and these patents may only be enforced

in the United States, TomTom adequately alleges both a relevant geographic market and product

market.

Garmin next contends that TomTom only pled a legal conclusion in regards to the dangerous

probability element. The Court considers the relevant market and Garmin's power in that market to

determine if a dangerous possibility exists. *See Surgical Care Ctr.*, 309 F.3d at 839. TomTom alleges

that Garmin outsells its closest competitor by $610 million in the United States, Garmin controls at

least 57 percent of the portable navigation market, and Garmin is trying to remove its next largest

competitor from the relevant market by enforcing fraudulently procured patents. *Id*. ¶¶ 96–97,

127–28. By alleging facts of Garmin's market power and its attempts to enforce allegedly fraudulent

patents, TomTom has alleged sufficient facts as to dangerous probability and predatory acts.

Finally, Garmin contends that TomTom failed to allege harm to competition. In its Proposed

Second Amended Answer and Counterclaims, TomTom alleges that "Garmin could harm the entire

portable handheld navigation device market by reducing competition, decreasing innovation, and

increasing prices to consumers of portable navigation devices." Proposed Sec. Am. Answer and Countercls. ¶¶ 107, 138. This allegation is supported by the pled facts defining the relevant market, identifying the predatory act and Garmin's specific intent to monopolize, and showing a dangerous possibility of achieving a monopoly.

At the pleading stage, TomTom only needs to show "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 S. Ct. at 1974. Construing the facts in the light most favorable to TomTom, TomTom has sufficiently pled *Walker Process* fraud claims.

Therefore, the Court **DENIES** Garmin's Motion to Dismiss TomTom's Fourth, Fifth, and Sixth Counterclaims and to Strike TomTom's Fifth Affirmative Defense.

### MOTION FOR LEAVE TO AMEND

After filing its First Amended Answer and Counterclaims, TomTom moved for leave to add Garmin International, Inc. Although TomTom claims that Garmin Ltd. is a holding company and that Garmin International is one of its subsidiaries, TomTom alleges that Garmin International is the actual controlling entity. TomTom also contends that the actors in its inequitable conduct and antitrust counterclaims are former or current employees of Garmin International.

**Applicable Law**

A party may join a counterclaim-defendant in the action if the party asserts "any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 13(h), 20(a). Transactions or occurrences satisfy the series of transactions or occurrences requirement of Rule 20(a) if some connection or logical relationship exists between the various transactions or occurrences. *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 456 (E.D.

Tex. 2004) (Davis, J.); *Hanley v. First Investors Corp.,* 151 F.R.D. 76, 79 (E.D. Tex.1993) (Schell, J.). "A logical relationship exists if some nucleus of operative fact or law exists." *MyMail*, 223 F.R.D. at 456.

Rule 16(b) allows a party to modify the Court's Docket Control Order upon a showing of good cause. FED. R. CIV. P. 16. The good cause standard requires the party seeking relief to show that, despite its exercise of diligence, it cannot reasonably meet the scheduling deadlines. *S&W Enters., L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003). The Court has broad discretion to allow scheduling order modifications and considers four elements to determine if modification is appropriate: (1) the explanation for the party's failure to meet the deadline; (2) the importance of what the Court is excluding; (3) the potential prejudice if the Court allows the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Id*. at 536. A party's failure to meet a deadline due to mere inadvertence is equivalent to no explanation at all. *Id*.

**Analysis**

Neither side disputes that questions of law or fact common to Garmin Ltd. and Garmin International will arise via the counterclaims. First, Garmin International is a subsidiary of Garmin Ltd., and the inventors of the '378 and '330 patents are current or former employees of Garmin International. Second, according to TomTom, "every Garmin employee listed in Garmin Ltd.'s initial disclosures as having relevant knowledge in both lawsuits is an employee of Garmin International." TomTom's Mot. For Leave 3–4. Finally, TomTom's inequitable conduct and antitrust counterclaims allege identical factual and legal issues against both Garmin Ltd. and Garmin International. A nucleus of operative fact or law in the counterclaims exists; therefore, the claims against Garmin

International arise out of the same transactions or occurrences as the claims against Garmin Ltd. As a result, Garmin International is a properly joined party under Rules 13(h) and 20.

Although TomTom timely filed its Amended Answer and Counterclaims pursuant to the Scheduling Order, the deadline for joining new parties was two months prior; therefore, TomTom must show good cause. TomTom claims that prior to the January 19, 2007 deadline, it had not yet received Garmin's infringement contentions. Additionally, TomTom claims that recent discovery provided the bases for its claims against Garmin International. TomTom's explanation for its delay is reasonable and weighs in favor of granting the motion to add Garmin International.

TomTom states that Garmin Ltd. and Garmin International have a close relationship as parent-subsidiary. TomTom claims that Garmin Ltd. will provide the same witnesses and evidence for both parties, resulting in no additional burden. This supports granting leave because adding Garmin International will not substantively or procedurally prejudice Garmin Ltd.

Although discovery has begun, Garmin Ltd. is unlikely to suffer prejudice by adding Garmin International because the asserted claims are identical. However, the Court can modify the docket control order, and trial is still over a year away. This factor favors granting the motion to add Garmin International.

TomTom has provided a reasonable explanation for seeking leave, and the potential prejudice, if any, is minimal. Garmin relied solely on its motion to dismiss to oppose the motion for leave, taking the position that adding Garmin International, Inc. will be improper if the Court grants Garmin's motion to dismiss. The Court denied Garmin's motion to dismiss; therefore, TomTom has shown good cause, and the Court **GRANTS** its motion.

## MOTION FOR LEAVE TO SUPPLEMENT ITS P.R. 3.1 INFRINGEMENT CONTENTION

Garmin moves to supplement its infringement contentions to include references to Sven Jurgens's testimony and to add doctrine of equivalents allegations based on information it learned in Jurgens's Rule 30(b)(6) deposition.

**Applicable Law**

Federal Rule of Civil Procedure 16(b) allows a party to modify the Court's Docket Control Order upon a showing of good cause. FED. R. CIV. P. 16. The good cause standard requires the party seeking relief to show that, despite its exercise of diligence, it cannot reasonably meet the scheduling deadlines. *S&W Enters., L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003). The Court has broad discretion to allow scheduling order modifications and considers four elements to determine if modification is appropriate: (1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice. *Id.* at 536. A party's failure to meet a deadline due to mere inadvertence is equivalent to no explanation at all. *Id.*

**Analysis**

*Garmin's Explanation for Its Failure to Meet the Deadline*

Garmin seeks to supplement its infringement contentions by adding doctrine of equivalent arguments to thirteen of its twenty-two claims and adding references to the testimony of TomTom's 30(b)(6) designee, Jurgens. Garmin contends that it could not decipher TomTom's source code, which came in three modules, without the help of Jurgens and, therefore, could not accurately

supplement its contentions until after Jurgens's deposition. Garmin sought leave to supplement a week after the deposition.

Neither party disputes that Garmin possessed two of the source code modules since June 2006[2] and received the final module on March 15, 2007. Garmin's infringement contentions were due on January 19, 2007. Pointing to the fact that Garmin did not address the first two modules in its original contentions, TomTom claims that Garmin was not diligent in supplementing its contentions.

Garmin contends that it did not delay in supplementing but was merely going through the discovery process. As agreed in an earlier protective order, TomTom produced the modules in paper format. Garmin contends that it sent interrogatories to TomTom requesting TomTom to identify the relevant portions of the source code. Although the parties dispute who is at fault for the overly broad answers to the interrogatories, they agree that the answers did not help Garmin decipher the source code. Garmin then noticed Jurgens's deposition and moved to supplement its contentions seven days after the deposition.

As Garmin apparently needed Jurgens's deposition to understand the source code, Garmin did not unreasonably delay in moving to supplement the contentions that mention source code. However, Garmin does not explain why it waited to supplement claims that do not mention source code.[3] For example, Claim 4 discusses a touch screen keypad. Garmin seeks to add a doctrine of

---

[2] TomTom produced these two modules during discovery for another patent case in the Western District of Wisconsin involving different patents. Garmin claims it did not analyze the first two modules with regard to the '378 patent.

[3] Garmin added doctrine of equivalent claims to Claims 4, 6,  7, and 15. These claims do not include source code.

equivalents claim even though Garmin does not assert that it learned anything relevant to claim 4 from Jurgens's deposition. The only mention of Jurgens is that he confirmed that the accused TomTom products include touch screen keypads. This is information that Garmin could have easily discovered by testing TomTom's products.

*Importance of What Would be Excluded*

Garmin contends that Jurgens's testimony provided additional information about how the accused products work and specific details about TomTom's source code. Garmin offers the calculation of starting points as an example. By purchasing the product, Garmin could only learn that the accused products calculate starting points, but through Jurgens's testimony, Garmin learned the formulaic approach that the accused products use to calculate starting points. This new information allowed Garmin to supplement relevant contentions with more specificity. Jurgens's testimony is important for claims relying on TomTom's source code, but Garmin has not shown its relevance for the claims do not include source code.

After Jurgens's deposition, Garmin also added doctrine of equivalents allegations to its infringement contentions. These allegations would allow Garmin to prove that TomTom's products are substantially equivalent instead of identical to the patent claims. As these allegations would give Garmin an alternate means to prove infringement, they are important.

*Potential Unfair Prejudice to TomTom*

TomTom claims Garmin's supplemented contentions will force it  to revisit prior discovery and conduct more prior art research. While extra discovery and research means more work, unfair prejudice does not exist here. Discovery does not close for another four months, and the trial date is fourteen months away; this leaves ample time for TomTom to address Garmin's supplemented

contentions. However, in the unlikely event that TomTom cannot remedy the problem within the proscribed scheduling order, TomTom can request a continuance of certain deadlines. This factor weighs in favor of granting leave to supplement.

*Conclusion*

For the reasons stated above, the Courts **GRANTS**, in part, Garmin's motion to supplement for all claims mentioning source code and **DENIES**, in part, the motion as to those claims that do not. TomTom released the ONE XL product in April of 2007. As TomTom does not oppose Garmin adding the ONE XL as an accused product, the Court **GRANTS** the motion as to the ONE XL. The Court cautions Garmin to adhere to the Local Patent Rules. Garmin failed to assert specific doctrine of equivalents claims for each element of each asserted claim, as required by Patent Rule 3.1(d). Although the Court allowed supplementation for claims involving source code in this unique circumstance, the Court cautions Garmin against subverting the objectives of the Patent Rules.

## MOTION FOR PROTECTIVE ORDER, CROSS-MOTION TO COMPEL, AND CROSS-MOTION FOR SANCTIONS

After deposing TomTom's Rule 30(b)(6) witness, Jurgens, on a Friday, Garmin cancelled its own 30(b)(6) witness's deposition, which was scheduled for the coming Monday. Garmin then moved for a protective order to prevent TomTom from deposing Garmin's 30(b)(6) designee regarding three topics: 1) Garmin's Infringement Contentions, 2) knowledge of accused products, and 3) facts surrounding how Garmin determined TomTom was infringing. TomTom responded by moving to compel the deposition and moving for sanctions for unilaterally preventing discovery. Claiming it learned new information from Jurgens and needs to supplement its infringement

14

contentions, Garmin argues it could not properly prepare its designee until the Court rules on whether it can supplement its contentions.

**Applicable Law**

The Court has a policy of liberal, open, and forthright discovery. Material is discoverable if it is "relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). "Unless the court . . . orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, does not operate to delay any other party's discovery." FED. R. CIV. P.26(d).

**Analysis**

As Rule 26(d) clearly states, one party may not unilaterally decide when to withhold discovery. Garmin's infringement contentions are considered its final contentions unless Patent Rule 3-6 allows for later amendment. Although the Court partially grants Garmin's motion to supplement its contentions, one party may not withhold discovery under the guise of deferring until a ruling on supplementing contentions. This is the type of gamesmanship that the Court warned about in *STMicroelectronics, Inc.v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004) (Davis, J.).

Garmin states in its motion,  "At a minimum, the Court should require TomTom to wait until Garmin has had the opportunity to supplement its disclosures or until the Court refuses Garmin the right to do so." Mot. at 5. While the Court disapproves of Garmin's tactics of unilaterally delaying discovery and strongly cautions both sides against such gamesmanship,  the Court has already ruled on the supplementation of Garmin's infringement contentions. Thus, the Motion for Protective Order is moot with regards to Topics 1 and 2.

Garmin also claims that Topic 3 will cover material within the scope of attorney work product. While this may be true, Topic 3 may also include discoverable non-privileged information, and counsel can  instruct the designee not to answer privileged questions. Therefore, the protective order is unnecessary.

Although Garmin's actions are disappointing, they do not yet rise to the level of sanctions. However, the Court warns both parties to not involve themselves in gamesmanship, but to treat each other as they would want to be treated.  Sanctions may become the appropriate remedy, if such conduct persists.

For the above reasons, the Court **DENIES** Garmin's Emergency Motion for a Protective Order on Topics 1-3 of TomTom's First 30(b)(6) Notice and TomTom's Cross-Motion for Sanctions and **GRANTS** TomTom's Cross-Motion to Compel.

## CONCLUSION

For the above reasons, the Court **GRANTS** TomTom's Motion for Leave to Add Garmin International (Docket No. 45), **GRANTS** TomTom's Cross-Motion to Compel (Docket No. 75), **GRANTS** in part and **DENIES** in part Garmin's Motion for Leave to Supplement (Docket No. 76), **DENIES** Garmin's Motion to Dismiss TomTom's Fourth, Fifth, and Sixth Counterclaims and to Strike TomTom's Fifth Affirmative Defense (Docket No. 62), **DENIES** Garmin's Motion for Protective Order  on Topics 1-3 of TomTom's First 30(b)(6) Notice (Docket No. 72), and **DENIES** TomTom's Cross-Motion for Sanctions (Docket No. 75).

16

**So ORDERED and SIGNED this 3rd day of October, 2007.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**